UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION K. CUNNINGHAM,

        Petitioner,

                                                    Case No. 13-cv-10773

v.

                                                    HON. MARK A. GOLDSMITH

CATHERINE S. BAUMAN,

       Respondent.
_____/

**OPINION AND ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1); (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING PERMISSION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

       Petitioner Dion K. Cunningham, currently confined at the Alger Maximum Correctional Facility in Munising, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). After a jury trial in the Wayne County Circuit Court, Petitioner was convicted of the following: (i) three counts of assault with intent to commit armed robbery, Mich. Comp. Laws § 750.89, (ii) armed robbery, Mich. Comp. Laws § 750.529, (iii) assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, (iv) felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and (v) commission of a felony with a firearm. Mich. Comp. Laws § 750.227b. As a result of these convictions, Petitioner is serving multiple concurrent terms of imprisonment, the longest of which 15-to-30 years, plus an additional two-year consecutive term for the felony-firearm offense.

       The petition raises nine claims: (i) Petitioner's trial counsel was ineffective for referring to a defense witness in his opening statement who was not presented at trial; (ii) Petitioner was erroneously sentenced based on facts not found beyond a reasonable doubt by the jury; (iii)

Petitioner's trial counsel was ineffective for failing to preserve the sentencing issue; (iv) the trial court never acquired jurisdiction because of a defective warrant and complaint; (v) the trial court failed to order the prosecutor to provide discovery for the defense; (vi) the prosecutor failed to provide discovery at defense counsel's request; (vii) the police and the prosecutor failed to identify persons responsible for threatening material defense witnesses; (viii) defense counsel was ineffective for failing to object to the presentation of evidence that was not disclosed during discovery; and (ix) Petitioner was denied the effective assistance of appellate counsel.

For the reasons explained fully below, the Court denies the habeas petition because Petitioner's claims are without merit and/or they are barred from review by his state-court procedural default. The Court declines to issue Petitioner a certificate of appealability, but grants Petitioner permission to proceed on appeal in forma pauperis.

## II. BACKGROUND

Petitioner's convictions stem from the February 7, 2006 robbery and assault of several of acquaintances with whom he had been gambling earlier in the day. The prosecutor's theory was that Petitioner acted in concert with his brother, DeJuan Cunningham, and another man.

At trial, the four complainants – William Price, Garry Young, Mishawn Gordon, and Douglas Brown – all testified that Petitioner was one of the three perpetrators. Price identified Petitioner as approaching him with a gun and testified that shots were fired in his direction as he fled the scene. Young also testified that Petitioner was one of the perpetrators, and he saw Petitioner firing shots at Price. Young was able to identify Petitioner because Petitioner was not wearing a mask. Gordon also identified Petitioner as one of the perpetrators, and he saw Petitioner shoot at Price. Gordon identified Petitioner because Gordon could see Petitioner's face, and because Petitioner was wearing the same clothing he was wearing earlier that day.

Gordon had seen Petitioner with the same gun on previous occasions. Brown likewise testified that Petitioner was one of the perpetrators. Brown indicated the perpetrators aimed a gun at him and the others and ordered them to "get down." Brown saw Petitioner's face and noted that Petitioner was wearing the same clothing that he was wearing earlier that day. Brown had known Petitioner for approximately five or six months before the incident.

DeJuan Cunningham pleaded guilty to charges stemming from the incident in a prior proceeding. At Petitioner's trial, DeJuan testified that it was another person, and not Petitioner, who was involved in the robbery. Petitioner's girlfriend testified that Petitioner was with her at her home at the time of the robbery.

Previously, during opening statements, defense counsel referenced a woman named Robin Scott, who he said would testify that she heard the victims admit that Petitioner was not involved in the robbery. As will be discussed in more detail below, Scott went into hiding during the trial, and defense counsel was unable to call her during the defense's case.

Following his conviction and sentencing, Petitioner filed a direct appeal in the Michigan Court of Appeals, raising the following claims:

  i. "Mr. Cunningham was denied his Sixth Amendment right to the effective assistance of an attorney where his trial counsel referenced witnesses in opening statement and during questioning that he knew or should have known he was not going to be able to call to support the defense's case."

  ii. "Mr. Cunningham was denied his Sixth and Fourteenth Amendment rights where the trial court sentenced him based on facts not found by the jury beyond a reasonable doubt."

  iii. "Mr. Cunningham was denied the effective assistance of his attorney where his trial attorney failed to object to the sentencing issue in this appeal."

Def. Appellate Br. at 22, 24, 25 (cm/ecf pages) (Dkt. 10-1).

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished decision. People v. Cunningham, No. 272545, 2007 WL 4245643 (Mich. Ct. App. Dec. 4, 2007). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Cunningham, 746 N.W.2d 71 (Mich. 2008).

Petitioner returned to the trial court and filed a motion for relief from judgment, asserting the following six claims:

    i.    "The court file does not contain a proper signed, sworn, original complaint, the unsigned, unsworn complaint is defective and the circuit never acquired jurisdiction in this case."

    ii.    "Defendant was denied his state and federal due process rights to a fair trial by the court not ordering the prosecution to provide discovery to counsel upon request."

    iii.    "Defendant was denied his state and federal due process rights to a fair trial by the prosecutor's complete failure to provide discovery to counsel upon request."

    iv.    "Defendant's Sixth Amendment due process rights to present a witness in his favor was infringed when the police failed to investigate and uncover the identities of the individuals who threatened a material defense witness from testifying."

    v.    "Defendant was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to object to the prosecution admitting evidence that was not provided through discovery request; in proceeding to trial when trial counsel knew that he did not have complete discovery; to fully present a defense for Defendant, and therefore violated the fundamental constitutional rights and Fifth Amendment right to due process of law, contrary to U.S. Constitution Am. V, VI, & XIV; Mich Const. 1963, Art. 1, §§ 17, 20."

    vi.    "Defendant received deficient and inadequate representation on his appeal by right by his appellate counsel, thus denying him

4

>   his state and federal constitutional rights to effective assistance of appellate counsel."

Def. Mot. at 2-4, 6 (cm/ecf pages) (Dkt. 10-7).

The trial court denied the motion for relief from judgment in an opinion and order dated February 4, 2011. The trial court found that "[d]efendant has failed to demonstrate 'good cause' to raise such grounds on appeal or in a prior motion and 'actual prejudice' resulting from the alleged irregularities." 2/4/2011 Op. & Order at 5 (cm/ecf page) (Wayne Cnty. Cir Ct.) (Dkt. 10-8) (citing Mich. Ct. R. 6.508(D)(3)(a-b)).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, but the application was denied for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). 5/2/2012 Order at 1 (cm/ecf page) (Mich. Ct. App.) (Dkt. 10-5). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that court also denied relief under Rule 6.508(D). People v. Cunningham, 821 N.W.2d 552 (Mich. 2012).

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme

Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV.  ANALYSIS

**A.  Procedural Default**

7

Respondent asserts that the claims Petitioner raised in his state post-conviction review proceeding are barred from federal habeas review because the state courts relied on an independent and adequate state procedural rule for denying relief. Specifically, Respondent contends that the trial court's reliance on Michigan Court Rule 6.508(D)(3) acts to bar review of his post-conviction review. See, e.g., Akrawi v. Booker, 572 F.3d 252, 261 (6th Cir. 2009) ("It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan courts may rely in foreclosing review of federal claims."). For the reasons stated in Respondent's answer, the Court agrees that review of these claims is barred and that Petitioner has failed to demonstrate cause and prejudice to excuse the procedural default. See Resp't Answer at 34-44 (Dkt. 13).

Nevertheless, while the procedural default doctrine precludes habeas relief on defaulted claims, the procedural default doctrine is not jurisdictional. Trest v. Cain, 522 U.S. 87, 89 (1997). Therefore, the Court will also discuss the merits of Petitioner's defaulted claims, along with the claims that were presented to the state courts during his direct appeal.

### B. Ineffective Assistance of Trial Counsel

Petitioner presents three claims of ineffective assistance of trial counsel. In his first habeas claim, Petitioner asserts that his counsel was ineffective for referring to a defense witness in his opening statement but then failing to produce the witness during the defense case. His third habeas claim asserts that his counsel was ineffective for failing to object at sentencing to the trial court's reliance on facts not proven beyond a reasonable doubt when imposing sentence. Finally, Petitioner's eighth habeas claim asserts that his trial counsel was ineffective for failing to object to the presentation of evidence by the prosecutor that was not disclosed prior to trial.

8

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." Id. at 689. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689.

Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792). The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

1. **Opening Statement**

Petitioner's first habeas claim asserts that his counsel performed ineffectively for representing that he would call Robin Scott as a defense witness in his opening statement. Petitioner asserts that counsel should not have mentioned Scott because he should have known that she would refuse to testify.

The record shows that prior to jury selection, information came to the trial court that spectators associated with both Petitioner and the complainants were misbehaving. During the ensuing colloquy, which included members of the public, a man named Kenneth Patton stated that Robin Scott was supposed to be a key witness for the defense, but that she was afraid to come to court because of her family, which included one of the complainants. 6/22/2006 Trial Tr. at 35-36 (Dkt. 9-1). Defense counsel confirmed that he had subpoenaed Scott to testify. Id. at 37. Defense counsel stated that his investigator spoke with Scott's mother that morning and was told that the mother would ensure that Scott would appear. Id. at 38.

During opening statement, defense counsel referred to Scott as a defense witness:

> The proofs will show that there was a cousin to William Price and his cousin's name is Brenda Scott. Brenda Scott was at her home when the – when her cousin and his three friends; Douglas Maurice Brown, Garry Young, and Mishawn Gordon were discussing the incident. And they admitted in front of her, and she has been subpoenaed and will be here to testify. That they admitted that they know that Dion Cunningham was not involved in this incident but they wanted to use him as the level to get their money back. That's what this case is all about.

6/26/2006 Trial Tr. at 20 (Dkt. 9-2).

Then at trial, during defense counsel's cross examination of three of the complainants, he began to question them about Scott's claim. William Price and Garry Young both claimed that they did not know Scott. Id. at 83, 175. Mishawn Gordon admitted on cross examination that Robin Scott was Douglas Brown's cousin, but he denied that he went to her house after the

10

incident or talked about the incident in her presence. 6/27/2006 Trial Tr. at 13 (Dkt. 9-3). On re-direct examination by the prosecutor of the fourth complainant, Douglas Brown testified that Scott is his cousin, but he did not have much of a relationship with her. He testified that Scott was Petitioner's brother's girlfriend. Id. at 74-75. It should be noted that there was some confusion at trial whether Scott's first name was Robin or Brenda.

After the third day of trial, defense counsel feared that Scott might not appear, so he made an offer of proof outside the presence of the jury, in which he played a phone message from her into the record. In the message, Scott describes how the complainants told her that Petitioner was not present during the incident. 6/28/2006 Trial Tr. at 4-6 (Dkt. 9-4). Defense counsel mentioned that he had obtained a witness detainer from the court the previous day, but he learned that Scott was in hiding. Id. at 4-5.

After the prosecution rested its case, Scott could still not be located. Defense counsel informed the court that "we've got the problem with the missing witness, Robin Scott." Id. at 3. Defense counsel went on to note that he represented to the jury that Scott would testify, and he asked to admit evidence that she was subpoenaed and that a warrant had been issued for her arrest. Id. at 3-4. Defense counsel stated that he "had every expectation that she would show up. It wasn't until at the last minute that [counsel] found out that she definitely was not coming." Id. at 4. The Court ruled that the jury would be instructed that the witness was unable to be located, even with the Court's assistance. Id. at 5-7. Later, during closing argument, the prosecutor asserted that the jury should disregard the opening statement regarding Scott because no evidence was ever presented about her statement. Id. at 96-97.

The Michigan Court of Appeals addressed and rejected this allegation of ineffective assistance of counsel during Petitioner's appeal of right on the merits:

11

Defendant claims that his attorney was ineffective because he made frequent reference to a potential witness, Robin Scott, when he should have known he could not produce her as a witness at trial.

Defendant's claim that he was denied the effective assistance of counsel presents a question of constitutional law, which we review de novo. Because defendant failed to preserve this issue, we review errors that are apparent on the record.

The record reflects that the witness, Robin Scott, indicated a willingness to testify that complainants told her that defendant was not involved in the crimes. However, defendant argues that his attorney should not have mentioned Scott's name during his opening statement because he had learned that Scott was fearful about testifying. Defendant also claims that his attorney should not have asked each of the complainants about whether they discussed the robbery with Scott. By doing so, defendant contends that his attorney raised the expectations of the jurors, which resulted in prejudice when Scott, ultimately, did not testify.

We disagree with defendant because his counsel's questioning about Scott was necessary to establish a foundation for Scott to testify as an impeachment witness. While some question arose about whether Scott would testify, it did not become clear that she would not appear until after defense counsel had already questioned the complainants about her. When defense counsel learned that Scott would not testify, he sought the trial court's assistance in securing her testimony. Defense counsel also persuaded the trial court to inform the jury that Scott could not be produced despite defense counsel and the trial court's efforts. Under the circumstances, defense counsel developed a reasonable trial strategy and, when he discovered that Scott would not appear, he took steps to alleviate any negative consequences. Clearly, counsel's performance did not fall below an objective standard of reasonableness.

Further, defendant cannot show that he was prejudiced by his counsel. Defendant argues that, instead of mentioning Scott's testimony, counsel should have pursued the alibi defense established by the testimony of LeKeisha York, defendant's girlfriend. However, had counsel done so, nothing suggests that the result of the trial would have been different. York's testimony could have been impeached because of her relationship with defendant and, regardless, the testimony did not establish that defendant was at home at the time of the robbery. A police officer

> testified that he arrived at the scene of the crime by 8:00 p.m. York testified that, at around 7:30 p.m., defendant was at their home just a few blocks away from where the robbery occurred. Obviously, defendant could have participated in the robbery and returned home by 7:30 p.m. and, therefore, York's testimony did not establish that defendant did not participate in the crime. Moreover, four eyewitnesses testified that defendant committed the crime. Therefore, defense counsel's strategic decision to not further stress the alibi defense did not prejudice defendant.

Cunningham, 2007 WL 4245643, at *1-2 (internal citations omitted).

This decision did not unreasonably apply the established Supreme Court standard. In English v. Romanowski, the Sixth Circuit held that the defense attorney acted unreasonably when he promised testimony from a third-party witness during his opening statement and later abandoned that strategy. 602 F.3d 714, 728 (6th Cir. 2010). The court reasoned that, had the attorney fully investigated the witness and her story prior to opening statements, he would not have promised to call her as a witness. Id. The Court found that it is unreasonable for counsel to promise testimony to the jury without first examining the availability and soundness of such testimony where counsel could, and should, have discovered these details prior to trial. Id.; Plummer v. Jackson, 491 F. App'x 671, 677 (6th Cir. 2012) (same)

This case is reasonably distinguishable from English. As the Michigan Court of Appeals found, defense counsel had a private investigator speak with Scott, and she readily told him that the complainants falsely accused Petitioner, and she left him with her contact information. As defense counsel explained to the trial court, he believed that Scott would present herself at trial, and when it began to appear that she was reluctant to do so, he took steps to ensure her presence by issuing a subpoena and obtaining a witness detainer.

In English, in contrast, defense counsel was found to be ineffective because he promised to call a defense witness at trial without having anyone for the defense interview her. The

English court found that, had an investigation been conducted, it would have revealed that her testimony was not advantageous to the defense, and, therefore, counsel would never have promised to call her. 602 F.3d at 728-730.

Here, defense counsel reasonably decided that Scott would make a worthwhile defense witness because his investigator had spoken with her. Indeed, the conversation was recorded and placed on the trial record in the offer of proof. Defense counsel reasonably believed that Scott would present herself, and when it became clear she would not, he took every reasonable step to ensure her production. When that failed, counsel successfully obtained an instruction informing the jury that Scott refused to appear despite the court and defense counsel's efforts. Given the record developed in the trial court, the adjudication of this claim by the Michigan Court of Appeals did not involve an unreasonable application of Strickland. Therefore, the Court concludes that the claim is without merit.

### 2. Failure to Object to Sentence

Petitioner's second allegation of ineffective assistance of counsel is premised on his attorney's failure to raise the objection to his sentence, which is discussed below in Section C of this opinion. Because that claim is without merit, counsel was not ineffective for failing to raise an objection. See Bradley v. Birkett, 192 F. App'x 468, 475 (6th Cir. 2006).

### 3. Failure to Object to Presentation of Undisclosed Evidence

Petitioner asserts that his counsel was ineffective for failing to object to the admission of evidence that was not disclosed by the prosecutor prior to trial. The only reference to undisclosed evidence in Petitioner's pleadings is a reference to two shell casings that were recovered near the crime scene. See Def. Mot. at 45 (cm/ecf page) (Dkt. 10-7).

14

The trial record shows that one of the testifying officers indicated that he searched the area where the victims told him the shots had been fired. He did a thorough search of the area and found two shell casings. 6/27/2006 Trial Tr. at 130-132 (Dkt. 9-3). No gun was recovered, and the shell casings at issue were never connected to Petitioner.

Accordingly, Petitioner's counsel did not perform deficiently by failing to object. First, there is no indication in the record that he did not know about the casings or had any basis for an objection. And second, the existence of the casings had no bearing on his defense. Moreover, even if the evidence was objectionable, it did not prejudice Petitioner in any way. Petitioner did not dispute that the complainants were the victims of a robbery. He claimed only that he was not one of the perpetrators. A successful objection to the shell casing testimony would not have made a more favorable outcome for Petitioner any more likely. Therefore, this allegation of ineffective assistance of counsel is without merit.

Accordingly, Petitioner has failed to demonstrate that he was denied the effective assistance of trial counsel.

### C. Sentenced Based on Facts Not Proven Beyond a Reasonable Doubt

Petitioner claims that his sentence was improperly enhanced based on facts found by the trial judge rather than a jury, citing Blakely v. Washington, 542 U.S. 296 (2004). Blakely concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge in that case found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must

be submitted to the jury and proven beyond a reasonable doubt. Id. at 301 (citing Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

Blakely, however, does not apply to Petitioner's sentence. Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system, in which a defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. See People v. Drohan, 715 N.W.2d 778, 790 (Mich. 2006). Only the minimum sentence is based on the applicable sentencing guideline range. Id.; see also People v. Babcock, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing Mich. Comp. Laws § 769.34(2)). The Sixth Circuit has authoritatively held that the Michigan indeterminate sentencing system does not run afoul of Blakely. See Chontos v. Berghuis, 585 F.3d 1000, 1002 (6th Cir. 2009). Therefore, the Court finds that this claim is without merit.

### D. Jurisdiction of Trial Court

Petitioner asserts that the trial court never acquired jurisdiction over his case because the complaint and warrant were never signed and sworn before a judicial clerk or officer, as required by state law. This claim is not cognizable on federal habeas review.

The "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976). It is well-settled that a perceived violation of state law may not provide a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A "state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of

federal habeas review." Strunk v. Martin, 27 F. App'x 473, 475 (6th Cir. 2001). Therefore, any state-law procedural defect in the filing of the charging documents that allegedly affected the jurisdiction of the state court to try him does not implicate Petitioner's federal constitutional rights.

### E. Discovery Violation

Petitioner asserts that the prosecutor did not comply with Mich. Ct. R. 6.201(A), which governs mandatory discovery in criminal cases. He also asserts that the trial court failed to issue a discovery order as required by state law. As indicated above, the only reference to undisclosed evidence in Petitioner's pleadings is a reference to the two shell casings.

"It is well settled that there is no general constitutional right to discovery in a criminal case." Stadler v. Curtin, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor or judge violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. See Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002). Therefore, the Court finds that this argument does not state a cognizable claim.

### F. Witness Intimidation

Petitioner asserts that his rights under the Compulsory Process Clause were violated when the police and prosecutor failed to investigate and discover who was intimidating Robin Scott and prevented her from testifying.

As a matter of due process, a defendant has a fundamental right to present his own defense witnesses. Washington v. Texas, 388 U.S. 14, 19 (1967). Additionally, the Sixth Amendment provides the "right of an accused to have compulsory process for obtaining

17

witnesses in [the defendant's] favor." Id. at 17. Threatening or intimidating remarks by a trial court that deter a witness from testifying may deprive a defendant of due process under the Fourteenth Amendment. See Webb v. Texas, 409 U.S. 95, 96-97 (1972) (per curiam) (reversing a conviction where a trial judge severely admonished a defendant's sole witness regarding perjury and the witness then declined to testify). A defendant's right to present witnesses to establish a defense precludes prosecutors and judges from improperly threatening witnesses with perjury prosecution. Id. at 97-98; see also United States v. Thomas, 488 F.2d 334, 336 (6th Cir. 1973) (reversing a conviction obtained after a secret service agent informed a defense witness that the government would prosecute him if he testified).

However, Petitioner cites no case, let alone clearly established Supreme Court law, that stands for the proposition that the right to compulsory process may be violated when a witness is intimidated by a private individual whose actions cannot be attributed to a state actor. And here, there is no allegation or indication that the police or prosecution encouraged the intimidation. "Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." Miskel v. Karnes, 397 F.3d 446, 454 (6th Cir. 2005) (emphasis in original). Thus, identifying clearly established federal law is the "threshold question under AEDPA." Williams v. Taylor, 529 U.S. 362, 390 (2000). Because he cannot support this claim with clearly established Supreme Court law, Petitioner has not demonstrated entitlement to habeas relief.

### G. Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate attorney was ineffective for failing to raise the issues he raised in his motion for relief from judgment in his direct appeal. But, for the reasons stated above, Petitioner's post-conviction review claims are without merit. Appellate counsel need not

raise non-meritorious claims on appeal. Shaneberger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010). Therefore, the Court will deny habeas corpus relief on this claim.

### H. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that reasonable jurists could not debate the Court's assessment that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

### I. Leave to Proceed on Appeal **In Forma Pauperis**

19

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. The Court concludes that an appeal in this case could be taken in good faith. Therefore, the Court grants Petitioner permission to proceed IFP on appeal.

## V. CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus (Dkt. 1). The Court declines to issue Petitioner a certificate of appealability, but grants Petitioner permission to proceed on appeal in forma pauperis.

SO ORDERED.

Dated: October 30, 2015        s/Mark A. Goldsmith
    Detroit, Michigan        MARK A. GOLDSMITH
                                                United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2015.

                                              s/Karri Sandusky
                                              Case Manager